UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-20487-CIV-GAYLES
CASE NO. 15-20224-CIV-GAYLES

**DAUVINEE STANFIELD**
and **LOREAL WRIGHT**,

        Plaintiffs,

v.

**FLY LOW, INC.**, d/b/a **KING OF DIAMONDS,** a Florida corporation, *et al.,*

        Defendants.
_____/

**JAMIKA WALKER,**

        Plaintiff,

v.

**FLY LOW, INC.,** d/b/a **KING OF DIAMONDS,** a Florida corporation, *et al.,*

        Defendants.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION

**THIS CAUSE** comes before the Court on Fly Low, Inc.'s ("Fly Low") Motion to Compel Arbitration in Case Nos. 15-20487 ("Wright Motion") [ECF No. 5], and 15-20224 ("Walker Motion") [ECF No. 9] (collectively, the "Motions"). The Motions have been fully briefed and are ripe for adjudication. The Court has reviewed the record and the pleadings, has heard argument from the parties, and is otherwise fully advised in the premises. For the reasons that follow, the Motions are **GRANTED**.

**INTRODUCTION**

Dauvinee Stanfield ("Stanfield"), Loreal Wright ("Wright"), and Jamika Walker ("Walker") (collectively, "Plaintiffs") are former employees of Fly Low, a company that does business as King of Diamonds. Plaintiffs sued Fly Low and others for violations of the Fair Labor Standards Act ("FLSA"), retaliatory discharge, and invasion of privacy. Fly Low seeks to compel the Plaintiffs to arbitrate their claims relying on the arbitration provisions set forth in agreements purportedly signed by each of the Plaintiffs.[1]

**BACKGROUND**

I. **Case No. 15-20487**

Stanfield and Wright were employed as waitresses by Fly Low. (Compl. ¶ 21.) They sued Fly Low alleging a violation of the FLSA for Fly Low's failure to pay them overtime wages and the required federal minimum wage. (*Id*. ¶¶ 17-44.)

II. **Case No. 15-20224**

Walker, a bartender, was also employed by Fly Low. (Second Am. Compl. ¶ 20.) Like Stanfield and Wright, Walker sued Fly Low alleging violations of the FLSA based on Fly Low's failure to pay her the required federal minimum wage. (*Id* ¶¶ 17-79). Walker also claims that she was forced to resign because Fly Low withheld her pay after she complained about her wages, which constituted a constructive termination. (*Id.*). In addition, Walker claims that after she resigned an advertisement using her likeness was published by Fly Low and/or the other defendants without her authorization. (*Id.*). For these reasons, Walker brings additional claims

---

[1] Each of the agreements contains similar arbitration provisions. [*Cf.* (the "Stanfield Agreement) Case No. 15-20487 [ECF No. 5-1] ¶¶ 1-4; (the "Wright Agreement") Case No. 15-20487 [ECF No. 5-2] ¶¶ 1-6; and (the "Walker Agreement") Case No. 15-20224 [ECF No. 9-1] ¶¶ 1-4]. Therefore, the Court will refer to the agreements collectively as (the "Arbitration Agreements").

for retaliatory discharge, unauthorized publication of her likeness, and invasion of privacy. (*Id*. ¶¶ 80-96).

### III.   The Provisions of the Arbitration Agreements[2]

The Arbitration Agreements provide that any "covered claim … against [King of Diamonds], its owners, directors, officers, managers, employee or agents" shall be subject to arbitration. Each agreement defines covered claims to include "the [FLSA] … and/or common law regulating employment termination … the law of contract or the law of tort." In addition to defining "covered claims", the agreements include the following provisions:

> The arbitration ***shall be administered by*** the American Arbitration Association ("AAA") and the employment arbitration portion of the AAA's Employment Arbitration Rules and Mediation Procedures. The arbitration proceeding shall be held before one neutral, third-party arbitrator. If there are any differences between this Arbitration Policy and the employment arbitration portion of the AAA's Employment Arbitration Rules and Mediation procedures, this Policy shall apply.

(emphasis added).

Fly Low argues that each of claims brought by the respective Plaintiffs are covered claims under the Arbitration Agreements. And, to the extent that the validity of the Arbitration Agreements is in question, Fly Low asserts that such questions are committed to the jurisdiction of the arbitrator based on the plain language of the Arbitration Agreements.

### GOVERNING PRINCIPLES OF LAW

"The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 (2006), provides the substantive law controlling the validity and enforcement of covered arbitration agreements." *Schoendorf v. Toyota of Orlando*, No. 6:08-cv-767-Orl-19DAB, 2009 WL 1075991, at *3 (M. D. Fla. Apr. 21, 2009). However, "[a]rbitration under the [FAA] is a matter of consent, not coercion…." *Id*.

---

[2]   All citations in this section are taken directly from the language of the Arbitration Agreements. The agreements are provided in the record as noted in FN1.

(quoting *Volt Info. Scis.*, *Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989)). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

In determining the validity of an agreement to arbitrate, the Supreme Court has noted that, in most circumstances, "a court should decide 'certain gateway matters, such as whether the parties have a valid arbitration agreement at all . . . .'" *Id.* (citing *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003)). This "[question of arbitrability], is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Id.* (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). However, parties can agree to allow the arbitrator to determine the "existence, scope or validity of the arbitration agreement", including hearing any objections to arbitrability. *Terminix Int'l Co. v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1332 (11th Cir. 2005).

When an arbitration agreement incorporates provisions that confer jurisdiction over threshold matters to the arbitrator, that agreement "clearly and unmistakably" divests the court of its jurisdiction to answer the question of arbitrability. *See id*. (holding that because the arbitration agreement incorporated the jurisdictional provisions provided by the AAA, it was for the arbitrator rather than the court to determine the agreement's validity); s*ee also Jones v. Pro Source Servs., Inc.*, No. 8-13-cv-1311-T-30EAJ, 2013 WL 37766889 (M. D. Fla. July 17, 2013) (holding that where an arbitration agreement incorporated the AAA's Employment Arbitration Rules, jurisdiction over issues of arbitrability were conferred to the arbitrator instead of the court).

## DISCUSSION

Plaintiffs' opposition rests on the argument that the Arbitration Agreements cannot be enforced because they were signed under duress or forgery. This argument fails.

### I. The Arbitration Agreements Confer Jurisdiction on the Arbitrator to Determine the Validity of the Arbitration Agreements

Courts have considered "whether the [c]ourt or the arbitrator should resolve the plaintiff's objection to the validity of the arbitration agreement." *Jones*, 2013 WL 3776689, at *1. In *Jones,* the court noted that Rule 6(a) of the AAA's Employment Arbitration Rules stated, "[t]he arbitrator shall have power to rule on his or her own jurisdiction, including any objections with respect to the ***existence, scope or validity*** of the arbitration agreement." *Id.* at *3 (emphasis added). Because Rule 6(a) was incorporated into the parties' agreement, the court found that they had agreed that an arbitrator would resolve the question of whether there was a valid agreement to arbitrate. *Id.* That holding is applicable here.

The Arbitration Agreements incorporate the AAA's Employment Arbitration Rules and Mediation Procedures. This provides "clear and unmistakable evidence" that Stanfield, Wright, and Walker have, at a minimum, acquiesced to having the arbitrator resolve any objections to the validity of the arbitration agreement.[3] Therefore, the arbitrator must resolve Plaintiffs' objections as an initial matter.[4]

---

[3] The Court notes that Walker claims that she did not sign the agreement while Stanfield and Wright claim they signed under duress. Even so, Walker's claim is subject to the jurisdiction of the arbitrator. *See generally Schoendorf,* 2009 WL 1075991 (noting that even though the plaintiff argued that she did not sign the arbitration agreement, the determinative issue is whether the parties have a valid arbitration agreement).

[4] In light of the Court's finding, the Court need not rule on Plaintiffs' unconscionability arguments, which are moot in this proceeding.

## II. Arbitrating Plaintiffs' Claims Does Not Undermine The Collective Action Component of the FLSA

At the hearing on the Motions, Plaintiffs' counsel argued, for the first time, that compelling Plaintiffs to arbitrate their claims went against the collective action policy underpinning the FLSA. (Tr. of Hearing on Motions at 7-8.) This argument is unavailing.

The Eleventh Circuit analyzed the text of the FLSA on the same policy argument. *See Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326 (11th Cir. 2014). In *Walthour,* certain employees brought a collective action claim against their employer alleging a violation of the FLSA. *Id.* at 1327. The court noted that "[a]n arbitration agreement with a collective action waiver may be unenforceable notwithstanding the FAA, where a statute, like the FLSA, contains a 'contrary congressional command.'" *Id.* at 1327-31. However, after a careful examination of the FLSA's text, legislative history, purposes, and relevant Supreme Court decisions, the court found "no 'contrary congressional command' that preclude[d] the enforcement of plaintiffs' arbitration agreements and their collective action waivers." *Id.* at 1332. Despite Plaintiffs' argument to the contrary, Federal policy favors arbitration and there is no indication that arbitration, even in the face of a collective action waiver, interferes with the collective action policies of the FLSA.

Accordingly, it is hereby

**ORDERED and ADJUDGED** that the each of the Motions is **GRANTED.** Although the remaining defendants have not moved to compel arbitration, it appears this may be a case in which it is appropriate for non-parties to participate in the arbitration nonetheless. With that in mind, if the parties agree that arbitration of all claims is appropriate, the parties should inform the Court of their decision. It is further

**ORDERED and ADJUDGED** that this case is **STAYED** as to Defendant Fly Low, Inc. It is further

**ORDERED and ADJUDGED** that within 14 days after the arbitration proceedings are concluded, the parties must file a status report with the Court.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5th day of August, 2015.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc: Magistrate Judge Turnoff
All Counsel of Record